UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ANDREW DOUGLAS ROSS,

    Plaintiff,

v.

GORDON R. ENGLAND, Secretary of the Navy,

    Defendant.

Case No. C06-5041RJB

ORDER ON DEFENDANT'S MOTION TO DISMISS AND/OR FOR SUMMARY JUDGMENT

This matter comes before the court on Defendants' Motion to Dismiss and/or for Summary Judgment. Dkt. 17. The court has considered the pleadings filed in support of and in opposition to the motion and the file herein.

## PROCEDURAL HISTORY

Plaintiff worked at the Fleet and Industrial Supply Center (FISC) in Bremerton, WA as a Contract Specialist, GS-12. The FISC is a subordinate command of the Naval Supply System Command. On March 23, 2004, David Stokes, plaintiff's first line supervisor, wrote a letter recommending Plaintiff's termination. Dkt. 17-2, Exh. C at 19-21. The letter stated that Plaintiff engaged in unprofessional conduct when he (a) interacted in an unprofessional manner with Mr. Craig Haughtelin, one of the attorneys assigned to FISC; (b) acted in a disruptive manner and failed to comply with direct orders given to him by Mr. Stokes; and (c) yelled at his third-line supervisor, Commander Dwin Crow. *Id.*

The incidents referred to in the letter began on March 17, 2004 when Mr. Haughtelin requested

ORDER
Page - 1

that Plaintiff assist him in compiling interest calculations for a settlement proposal by noon on March 18, 2004. Dkt. 17-3, Exh. O at 93. Plaintiff told Haughtelin that he not have experience in calculating interest, but Mr. Haughtelin told Plaintiff that he could obtain help in calculating the interest from a co-worker. *Id.* Subsequently, Plaintiff sent a series of inflammatory e-mails to Mr. Haughtelin. *Id.* Among other statements, plaintiff stated that "To my understanding slavery was declared illegal in 1863 when my grandfather was 13 years old. Therefore I am very [sic] award of the behavior and attitudes of slave master" and "Please advise me on how you want to proceed in the future: as one professional interacting with another professional or the master abusing the slaves. Thanks!!!" *Id.* On the afternoon of March 17, 2004, Mr. Stokes approached Plaintiff to discuss the e-mails. Dkt. 17-2, Exh. A at 8. Plaintiff stated that he would not discuss the issue and walked away. *Id.*

On March 18, 2004, Plaintiff met with EEO officials for an investigative interview. Earlier in the month, Mr. Stokes and Plaintiff had postponed a performance review until after the EEO interview was conducted. The performance review was rescheduled for March 19, 2004. Prior to the rescheduled performance review on the morning of March 19, 2004, Mr. Haughtelin requested that Mr. Stokes bring Plaintiff to Mr. Haughtelin's office to discuss the interest calculations. Dkt. 17-2, Exh. B. Mr. Stokes went to Plaintiff's office, but Plaintiff declined to accompany Mr. Stokes. Dkt. 17-2, Exh. A at 10. Plaintiff told Mr. Stokes that he would not be "micro-managed" by him, and proceeded to walk away. *Id.*

Upon hearing this news, Commander Crow summoned Plaintiff to his office to discuss the events of the past several days. Dkt. 17-2, Exh. A at 11. Upon conclusion of the meeting, Plaintiff left, only to return a few minutes later. When he returned, he stood by the door and stated "I will not be lynched," "I will not be treated like a nigger," and "David Stokes is a racist." *Id.* at 12. Plaintiff then left Commander Crow's office again. *Id.* Following the incident, Commander Crow called security and placed Plaintiff on administrative leave for the rest of the day.

Plaintiff's termination was recommended by Mr. Stokes on March 23, 2004. Dkt. 17-2, Exh. C at 19-21.

Plaintiff requested review of his termination and alleged that the removal proposal was in retaliation and discrimination based on race. The evidence was reviewed by Commander Brian Knott, who was not directly involved with the FISC. Commander Knott upheld the decision to remove Plaintiff from federal

1  service. Dkt. 17-2, Exh I at 34-35. On May 21, 2004, Plaintiff was removed from federal service.

2  Plaintiff then appealed his removal to the Merit System Protection Board (MSPB). Prior to the
3  MSPB hearing, Plaintiff withdrew his discrimination claims and asserted only a claim of retaliation. Dkt.
4  17-3, Exh. K at 61-62. After a September 14, 2004 hearing, the administrative law judge affirmed the
5  termination action issuing the decision on November 16, 2005. Dkt. 17-3, Exh. M. Plaintiff then
6  petitioned for review of the MSPB decision by the EEOC's Office of Federal Operations (OFO). On
7  January 18, 2006, the OFO concurred with the MSPB decision. Dkt. 17-3, Exh. N at 88-89.

8  On January 24, 2006, Plaintiff filed this civil action (Dkt.1), alleging under Title VII (42 U.S.C. §
9  2000e, et seq.) that defendants terminated him in retaliation for protected activity. Plaintiff further alleged
10 that he was discriminated against on the basis of age and race. On December 29, 2006, Defendants filed a
11 motion to dismiss and/or for summary judgment. Dkt. 17. Plaintiff responded (Dkt. 21) and defendant
12 filed a reply (Dtk. 24).

13                             MOTION FOR SUMMARY JUDGMENT

14 Defendant contends that this case should be dismissed because the MSPB Judge correctly found
15 that the Department of Navy had good reason for terminating Plaintiff and there is no evidence that such a
16 determination was arbitrary or capricious. Further, defendant asserts that the claims of race and age
17 discrimination alleged by plaintiff are barred because plaintiff has not exhausted administrative remedies.

18 Plaintiff opposes the motion, arguing that the MSPB decision was arbitrary, capricious and contrary
19 to law because it failed to consider that the statements made by plaintiff to Mr. Haughtelin, Mr. Stokes,
20 and Commander Crow were protected activity. Plaintiff also claims that he has exhausted all
21 administrative remedies with regard to the age discrimination claim.

22                             LEGAL STANDARD FOR SUMMARY JUDGMENT

23 Summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and
24 admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material
25 fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The moving party
26 is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on
27 an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex*
28 *Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record,

taken as a whole, could not lead a rational trier of fact to find for the non moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)(nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed.R.Civ.P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 .S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors Association*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elect. Service Inc.*, 809 F.2d at 630. The court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra)*. Conclusory, non specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).

## DISCUSSION

**1.     Race Discrimination**

To establish federal subject matter jurisdiction, the plaintiff is required to exhaust his or her administrative remedies before seeking adjudication of a Title VII claim. *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1099 (9th Cir.2002). Under Title VII, a federal employee plaintiff must exhaust his administrative remedies by filing a timely claim with the EEOC, thereby giving the agency an opportunity to investigate the claim. 42 U.S.C. § 2000e-5(b); *see also B.K.B.*, 276 F.3d at 1099. The MSPB ordinarily has jurisdiction only over "adverse actions", as defined 5 U.S.C. § 7512. However, the MSPB also has pendent jurisdiction over discrimination claims brought in connection with an "adverse action" otherwise appealable to it. 29 C.F.R. § 1614.302; *Sloan v. West*, 140 F.3d 1255, 1259 (9th Cir. 1998). Therefore, the MSPB may properly exercise jurisdiction over Title VII claims, as is the case in the present

action.

When a plaintiff cuts the administrative process short in a Title VII claim, either through withdrawal or abandonment, the claimant fails to exhaust his administrative remedies and may not seek subsequent redress from the courts. *See Rivera v. United States Postal Service*, 830 F.2d 1037, 1039 (9th Cir.), cert. denied, 486 U.S. 1009 (1987) (claimant who withdrew his administrative claim prior to final disposition failed to exhaust administrative relief and claim was properly dismissed by the district court).

Plaintiff withdrew his race discrimination claim during the MSPB appeal process. Dkt. 23-2, Exh. A at 3. The only claim decided by the MSPB was his claim of retaliation. *Id*. Therefore, Plaintiff failed to exhaust his administrative remedies and the claim of unlawful discrimination on the basis of race should be dismissed.

**2.    Age Discrimination**

Unlike claims under Title VII, plaintiffs may, but are not required to, file an EEOC complaint for claims brought under the Age Discrimination in Employment Act. However, if a plaintiff does not choose to file a complaint with the EEOC, he or she must comply with the requirements of 29 U.S.C. § 633a(d):

> When the individual has not filed a complaint concerning age discrimination with the Commission, no civil action may be commenced by any individual under this section until the individual has given the Commission not less than thirty days' notice of an intent to file such action. Such notice shall be filed within one hundred and eighty days after the alleged unlawful practice occurred.

*See e.g. Stevens v. Department of Treasury*, 500 U.S. 1, 6-7 (1991) (claim allowed to proceed only after notice requirements were met).

Plaintiff contends that age discrimination was a claim raised in the MSPB complaint. Dkt. 21 at 13. However, the MSPB complaint contains no claim of age discrimination. Dkt. 17-3, Exh. P at 102-103. Therefore, since Plaintiff did not cite age discrimination in his MSPB complaint, file a complaint with the EEOC, or give the EEOC time to file a civil action, his age discrimination claim is barred by 29 U.S.C. § 633a(d).

Even if this court assumes that Plaintiff did raise an age discrimination claim in the administrative proceeds, and thereafter dismissed the claim, it is still barred in this proceeding because the EEOC was not put on notice of Plaintiff's intent to sue. In *Bankston v. White*, 345 F.3d 768 (9th Cir. 2003), plaintiff withdrew his MSPB age discrimination claim before proceeding with a civil action. The Ninth Circuit held that the withdrawal of the age discrimination claim did not bar a later civil action, because the plaintiff

followed the proper notice requirements before filing suit. In reaching its decision, the *Bankston* court distinguished the case from *Castro v. United States*, 775 F.2d 399, 404 (1st Cir. 1985), where the First Circuit barred jurisdiction over an ADEA lawsuit when the plaintiff had dismissed an administrative proceeding before filing suit and had also failed to notify the EEOC of intent to sue. Similar to the plaintiff in *Castro*, here Plaintiff did not notify the EEOC of his intent to sue. Even if Plaintiff had pled age discrimination in the MSPB claim and later abandoned or withdrew the claim, this action would be barred. Therefore, Plaintiff's claim is barred in this proceeding since he did not notify the EEOC of his intent to sue.

**3.     Retaliation**

Defendant contends that the MSPB's decision concerning the claim of retaliation may only be set aside if it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c). However, this standard of review does not apply to cases of discrimination. In cases of discrimination the employee has the right to have the facts considered *de novo* by the reviewing court. *Id.*

Section 7703(b)(2) defines discrimination to include claims brought under section 717 of the Civil Rights Act of 1964 (42 U.S.C. 2000e-16). The Ninth Circuit has previously found that claims of retaliation fall under this definition. *See Ayon v. Sampson*, 547 F.2d 446, 450 (9th Cir. 1976) ("We conclude that in enacting § 2000e-16, Congress intended to, and did incorporate into that section the provisions of the Civil Rights Act prohibiting harassment or retaliation for the exercise of those remedial rights established by the Act."). Accordingly, the claim of retaliation is reviewed *de novo* by this court.

**A.     Establishing a Prima Facie Retaliation Claim**

In order to prevail on a Title VII claim of retaliation, a plaintiff must first establish a prima facie case of discrimination consisting of the following elements of the test set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973): (1) he engaged in a protected activity; (2) his employer subjected him to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse action. *Steiner v. Showboat Operating Co.*, 25 F.3d 1459 (9th Cir. 1994) (applying the *McDonnell Douglas* test to a retaliation claim). In the context of a termination, the employee must show

<pre>
</pre>

"by a preponderance of the evidence that engaging in the protected activity was one of the reasons for the firing and that but for such activity the plaintiff would not have been fired." *E.E.O.C. v. Hacienda Hotel*, 881 F.2d 1504 (9th Cir. 1989).

Both filing a complaint with the EEOC and making an informal complaint of unlawful employment practices to a supervisor are "protected activities". 42 U.S.C. § 2000e-3, protects employees from retaliation for statements "opposed to an unlawful employment practice." The employee's statement is not "opposed to an unlawful employment practice" unless it refers to some practice by the employer that is allegedly unlawful. *E.E.O.C. v. Crown Zellerbach Corp.*, 720 F.2d 1008, 1012 (9th Cir. 1983). For example, an assertion that an employer is personally bigoted, without more, is not statutorily protected opposition to an unlawful employment practice. *Id.*

Plaintiff's action in filing an EEOC complaint was protected activity. Any retaliation connected to the filing of that complaint, or to the investigation, would violate Title VII. However, Plaintiff's contentious interactions with coworkers in March 2004 were not protected activity and there is no evidence to connect his coworker interaction with his EEOC activity. Further, his statements directly accused several of his superiors of being racist, but these statements do not relate to any specific "unlawful employment practice." Any retaliation connected to those statements and actions does not constitute a violation of Title VII. Plaintiff's only protected activity was his involvement in his EEOC claim.

Plaintiff suffered adverse employment action when he was terminated. The remaining element that Plaintiff must establish is a causal connection between Plaintiff's protected activity concerning his EEOC complaint and his termination. The record identifies only circumstantial evidence in support of this causal connection. On March 18, 2004, Plaintiff had an investigational interview pertaining to an already pending EEO claim. Plaintiff asserts that the proximity in time between the EEO interview and Plaintiff's termination was sufficient to create a inference that he was fired in retaliation for the EEO meeting.

Causation may be established based on the timing of the relevant actions. Specifically, when adverse employment decisions are taken within a reasonable period of time after complaints of discrimination have been made, retaliatory intent may be inferred. *Passantino v. Johnson & Johnson Consumer Products, Inc.*, 212 F.3d 493, 507 (9th Cir. 2000). Several cases demonstrate how evidence of the timing of the termination alone can be sufficient to meet the initial burden placed on the plaintiff. *See,*

*e.g. Strother v. Southern Cal. Permanente Medical Group*, 79 F.3d 859 (9th Cir. 1996) (termination one day after filing of administrative complaint was enough evidence alone to meet burden); *Miller v. Fairchild Industries, Inc.*, 885 F.2d 498, 505 (9th Cir. 1989), (terminations 42 and 59 days after EEOC conferences and singing of EEOC settlements were sufficient to establish a prima facie case of causation).

Plaintiff has therefore established a prima facie case of retaliation concerning his involvement in EEOC activities.

### B.  Legitimate Nondiscriminatory Reason for Termination

Since plaintiff has asserted all three elements of a prima facie retaliation claim, the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for its decision. *Steiner,* 25 F.3d at 1464-65. Defendant terminated Plaintiff for conduct unbecoming a federal employee. Dkt. 17.2, Exh. I at 34. Specifically Commander Knott told Plaintiff that the reason behind his termination included (1) Plaintiff's failure to perform the interest calculation; and  (2) "abusive and insolent behavior" to supervisors in both verbal and e-mail exchanges.  *Id.*  The latter reason was deemed offensive and disruptive to the workplace.  *Id.*  Because defendant has articulated a legitimate nondiscriminatory reason for its action, it has also met its initial burden under the *McDonnell Douglas* test.

### C.  Pretext

If the defendant articulates a nondiscriminatory reason for its decision, the plaintiff then bears the ultimate burden of demonstrating that the reason was merely a pretext for a discriminatory motive. *Dominguez-Curry v. Nev. Transp. Dep't*, 424 F.3d 1027, 1037 (9th Cir. 2005).  Ultimately, the plaintiff has the burden to produce evidence, either direct or circumstantial, that suggests the action was due in part or whole to discriminatory intent. *Id.*  The plaintiff may meet this burden by demonstrating that the proffered explanation is inconsistent or otherwise unbelievable. *Id*.

Once this stage has been reached, courts have noted that the plaintiff "need produce 'very little evidence of discriminatory motive to raise a genuine issue of fact' as to pretext." *Strother*, 79 F.3d at 870 (quoting *Warren v. City of Carlsbad*, 58 F.3d 439 (9th Cir 1995)).  The same evidence that was used to establish a prima facie case can be used to create a genuine issue regarding whether the employer's explanations are pretextual. *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 890 (9th Cir.1994).  When circumstantial evidence is produced, it must also be both specific and substantial to meet the plaintiff's

burden. *Dominguez-Curry*, 424 F.33d at 1037. However, this higher burden is normally met when the plaintiff's evidence, direct or circumstantial, consists of more than the *McDonnell Douglas* presumption. *Lam v. University of Hawaii*, 40 F.3d 1551, 1559 (9th Cir. 1994).

The proximity in time between the termination and Plaintiff's EEO interviews again provide circumstantial evidence of a potentially retaliatory termination. Additional evidence also disputes the Defendant's asserted reasons for terminating Plaintiff. Specifically, while rescheduling the performance review, Plaintiff requested that the evaluation take place on April 18th, 2004 or beyond. Mr. Stokes refused and ordered that the evaluation take place on March 19th, the day after the EEO interview, or else Plaintiff would be disciplined. Dkt. 23-2 at 28. Further, the circumstances under which the interest calculations, upon which Defendant claims a legitimate reason for termination, were assigned are suspect. While Mr. Haughetlin stated the calculations were not necessarily needed within 24 hours and Plaintiff had never done such calculations before, the calculations were assigned the day before the EEO interview and were due at noon on the day of the interview. *Id*. At 12. Defendant also never considered a lesser discipline than removal. *Id*. at 31. This raises an issue of fact as to whether defendant's reasons for termination were pretextual. The court notes that, while evidence of pretext appears to be very weak, it is nonetheless sufficient to permit the claim to proceed to trial. Therefore, the motion for summary judgment on the issue of retaliation must be denied.

**4.    Conclusion**

Based upon the foregoing analysis, plaintiff's race and age discrimination claims should be dismissed, because the Plaintiff failed to exhaust administrative remedies. However, a genuine issue of material fact remains concerning plaintiff's claim of retaliation and summary judgment should be denied in respect to that claim.

Therefore, it is hereby **ORDERED** that defendant's motion for summary judgment (Dkt. 17) is **GRANTED IN PART AND DENIED IN PART** as follows:

    1.    Plaintiff's race discrimination claim is dismissed.

    2.    Plaintiff's age discrimination claim is dismissed.

    2.    Plaintiff's claim of retaliation may proceed.

The Clerk is directed to send uncertified copies of this Order to all counsel of record via the CM/ECF system and to any party appearing *pro se* at said party's last known address.

DATED this 5th day of February, 2007.

/s/ Robert J. Bryan
Robert J. Bryan
United States District Judge

ORDER
Page - 10